1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAWNELL LEADBETTER, individually
and all others similarly situated,

Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS,
INC., d/b/a COMCAST CABLE,
SETTLEMENT SUPPORT CENTER, LLC,

Defendants.

CASE NO.  C05-0892RSM

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT SETTLEMENT
SUPPORT CENTER, LLC'S
MOTION TO DISMISS

## I.  INTRODUCTION

This matter comes before the Court on defendant Settlement Support Center, LLC's

("SSC") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

(Dkt. #9).  Defendant argues that all of plaintiff's claims are barred under the *Noerr-Pennington*

doctrine.  Defendant contends that it has engaged in constitutionally protected activity by

attempting to contact plaintiff in an effort to settle an ongoing lawsuit.  Moreover, defendant

argues that the *Noerr-Pennington* doctrine bars plaintiff's claims because defendant's conduct is

incidental to the prosecution of the lawsuit brought by the record companies against plaintiff.

Alternatively, defendant argues that even if the *Noerr-Pennington* doctrine does not apply,

plaintiff cannot prove any set of facts that would entitle her to any relief.

Plaintiff responds that defendant violated Washington's Consumer Protection Act and

committed fraud by making false and deceptive statements to plaintiff in order to coerce

payment.  Additionally, plaintiff contends that defendant violated the Fair Debt Collection

MEMORANDUM ORDER - 1

1    Practices Act and the Washington Collection Agency Act when seeking to collect a debt when it

2    knew that no debt existed and no money was owed.  Plaintiff also argues that the *Noerr-*

3    *Pennington* doctrine has no application because the doctrine applies only to antitrust litigation,

4    and plaintiff's lawsuit does not contain any antitrust allegations.

5         In addition, plaintiff argues that defendant SSC engaged in civil conspiracy when

6    defendant Comcast Cable Communciations, Inc. ("Comcast") provided defendant SSC with

7    plaintiff's personal identifying information in the absence of a valid order, and in furtherance of

8    defendant SSC's collection activities. Plaintiff contends that defendants' conduct resulted in

9    damages and harm.

10        For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART

11   defendant's motion to dismiss, and allows plaintiff LEAVE TO AMEND its Washington

12   Collection Agency Act and fraud claims.

13                                   **II. DISCUSSION**

14        **A.  Background**

15        On July 1, 2004, several record companies brought suit against plaintiff Dawnell

16   Leadbetter ("Leadbetter") as a "John Doe" in the United States District Court for the Eastern

17   District of Pennsylvania, under the caption, *Capitol Records, Inc. et al. v. John Doe*, CV No.

18   04-3011.  (Dkts. #9-2 at 2 and #9-3 at 4).  The record companies brought suit against "John

19   Doe" because they did not know the identity of Ms. Leadbetter at the time, only knowing her

20   Internet Protocol Address ("IPA").  In their complaint, the record companies alleged that "John

21   Doe" had committed copyright infringement by sharing files, including sound recordings, on the

22   Internet.  (Dkt. #1-1 at 28).  Further, the lawsuit alleged that the "[d]efendant contracted with

23   an Internet Service Provider ("ISP") . . . to provide Defendant with the access to the Internet

24   which facilitated Defendant's infringing activities."  (Dkt. #10-2 at 3).  This lawsuit was one of

25   roughly 11,000 brought by record companies against individuals for copyright infringement.

26

MEMORANDUM ORDER - 2

1        On October 13, 2004, Judge Cynthia M. Rufe issued an order in *Elecktra Entertainment*

2   *Group, Inc. et al. v. Does 1-6*, CV No. 04-1241, authorizing the record companies to take

3   "immediate discovery . . . to obtain the identity of each Doe Defendant by serving a Rule 45

4   subpoena that seeks information sufficient to identify each Doe Defendant, including name,

5   address, telephone number, e-mail address, and Media Access Control address for each

6   Defendant." (Dkt. #9-4 at 2). Judge Rufe specifically ordered that the record companies "shall

7   attach the Court Directed Notice Regarding Issuance of Subpoena . . . [and the] Rule 45

8   subpoena shall instruct the University of Pennsylvania[1] to distribute a copy of said notice to each

9   Doe Defendant within seven days of service of the subpoena." (Dkt. #9-4 at 2-3). Judge Rufe

10  extended her order in paragraph 4 to apply to "all current and future cases filed in the Eastern

11  District of Pennsylvania that are related to the above-captioned case." (Dkt. #9-4 at 3).

12        To dispel any ambiguities regarding which cases Judge Rufe intended her order to apply

13  to in paragraph 4, she issued another order on October 25, 2004, which was to replace

14  paragraph 4 of the October 12, 2004 order. The relevant language reads:

15        4.      This ruling applies to all current and future civil actions filed in the Eastern
              District of Pennsylvania that have been or will be assigned for pre-trial
16            administrative purposes to a single judge in this Court and authorizes Plaintiffs to
              take immediate discovery limited to that authorized in this order from the
17            relevant ISP [("Internet Service Provider")], in such cases including, but not
              limited to, **Comcast**, which has been identified as the Defendants' ISP in these
18            cases involving Doe defendants in the following numbered civil actions: 04-650,
              04-293-2972, 04-2974, 04-2976, 04-2977, **04-2979-3021**, 04-3023-3029, 04-
19            3032-3078, 04-3080-3123, 04-3125-3139, and 04-3175.

20        With respect to cable internet service providers, this ruling further authorizes
         disclosure of information pursuant to 47 U.S.C. § 551(c)(2)(B).
21
22  (Dkt. #9-5 at 2) (emphasis added). This order and the accompanying notice were served

23  together with a subpoena upon defendant Comcast on November 22, 2004. (Dkt. #17-2 at 17).

24        In late January of 2005, plaintiff received a letter from the Los Angeles, California law

25  _____

26        [1] In that specific case, the University of Pennsylvania possessed the identities of the "Doe
    Defendants."

MEMORANDUM ORDER - 3

1    firm, Mitchell Silverberg & Knupp, LLP, stating that "[p]ursuant to a Court Order issued by

2    [Judge Rufe], your Internet Service Provider ("ISP") provided us with your identifying

3    information, including your name and address." (Dkt. #1-1 at 28).  This letter was the first time

4    plaintiff claims she had been notified that she was being sued by the record companies.  *Id.*

5    Furthermore, the letter directed plaintiff to contact defendant SSC as the record companies'

6    representatives. (Dkt. #1-1 at 36).  Plaintiff alleges that the letter threatened her to personally

7    appear to defend herself in Pennsylvania and potentially seek payment of hundreds of thousands

8    of dollars if she did not pay money to settle the case. (Dkt. #1 at 36).  After receiving the letter,

9    plaintiff contacted defendant SSC, and SSC offered to settle the case pending against her for

10   $4,500. (Dkts. #1 at 32 and #9-1 at 3).  Defendant instructed plaintiff that seeking legal advice

11   would drive up the cost of settlement.  *Id.*

12       Plaintiff alleges it was not until April 26, 2005 that she was notified why she had been

13   sued in Pennsylvania ten months earlier. (Dkt. #1-1 at 30).  Defendant Comcast notified plaintiff

14   that the record companies had sued her for copyright infringement of eight songs:

15       (1)   MC Hammer - "Pray"
         (2)   Nu Shooz - "I Can't Wait"
16       (3)   Steven Winwood - "Don't You Know What the Night Can Do?"
         (4)   Ricky Martin - "Livin' La Vida Loca"
17       (5)   Michael Jackson - "Dirty Diana"
         (6)   Kim Wilde - "Kids in America"
18       (7)   Eurythmics - "Sweet Dreams (Are Made of This)"
         (8)   No Doubt - "Underneath It All"
19
20       (Dkt. #1-1 at 31).  Plaintiff contends that she did not obtain these songs by file sharing,

21   that her daughter in fact owned the No Doubt CD, and that she was either unfamiliar with, or

22   disliked the other recordings she allegedly committed copyright infringement upon.  *Id.*

23       As a result, plaintiff brought the instant action against defendants Comcast and SSC

24   through its amended complaint filed on May 12, 2005. (Dkt. #1-1).  Plaintiff alleges that

25   defendant SSC violated Washington's Consumer Protection Act (Revised Code of Washington

26   ("RCW") 19.86), the Fair Debt Collection Practitioner's Act (15 U.S.C. § 1692), Washington's

MEMORANDUM ORDER - 4

1    Collection Agency Act (RCW 19.16), committed common law fraud, and committed common

2    law civil conspiracy.[2]  Defendant SSC now moves to dismiss the case pursuant to Fed. R. Civ. P.

3    12(b)(6).  (Dkts. #9).

4    **B.  Standard of Review for 12(b)(6) Motions**

5         A Rule 12(b)(6) motion should not be granted unless it appears that a plaintiff can prove

6    no set of facts in support of the claim entitling plaintiff to relief.  *Conley v. Gibson*, 355 U.S. 41,

7    45-46, 78 S.Ct. 99 (1957).  Further, a Rule 12(b)(6) dismissal is proper only where there is

8    either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a

9    cognizable legal theory."  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

10   Rule 12(b)(6) motions are generally viewed with disfavor and are rarely granted.  *Hall v. City of*

11   *Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1991).  In resolving a Rule 12(b)(6) motion, the

12   Court must construe the complaint in the light most favorable to the plaintiff, and accept all

13   well-pleaded factual allegations as true.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-

14   338 (9th Cir. 1996); *see also Hahn v. Codding*, 615 F.2d 830, 840 (9th Cir. 1980) (holding that

15   all reasonable inferences must be drawn in favor of the plaintiff).  While matters outside the

16   pleadings are generally not considered, documents referred to in the complaint and forming a

17   basis for plaintiff's claim may be considered.  *Venture Associates v. Zenith Data Systems Corp.*,

18   987 F.2d 429, 431 (7th Cir. 1993).

19        The sufficiency of the pleading itself is a procedural matter governed by the Federal

20   Rules of Civil Procedure.  *See Erie Railroad Co.v. Tompkins*, 304 U.S. 64, 78-79, 58 S.Ct. 817

21   (1938).  The pleadings need not allege facts constituting the claim for relief or defense, but need

22   only give fair notice of the pleader's claim or defense so that opposing parties can respond,

23   undertake discovery, and prepare for trial.  *Conley*, 355 U.S. at 47-48.  Thus, evidentiary facts

24

25
         [2] Plaintiff's complaint is ambiguous as to which causes of action apply to which defendants.
26   However, plaintiff clearly states in its response that the relevant causes of action as to defendant SSC are
     those listed above.

MEMORANDUM ORDER - 5

1   generally need not be set forth in the complaint.  *See, e.g., Leatherman v. Tarrant County*

2   *Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-169, 113 S.Ct. 1160 (1993)

3   (holding that "[f]ederal courts and litigants must rely on summary judgment and control of

4   discovery to weed out unmeritorious claims").

5          However, a Court may dismiss a case with prejudice if it determines, through judicial

6   notice, that material allegations upon which the plaintiff relies upon are false.  *Interstate Natural*

7   *Gas Co. v. Souther California Gas Co.*, 209 F.2d 380, 384 (9th Cir. 1953).  Additionally, a

8   Court may dismiss a claim when the plaintiff has included allegations disclosing some absolute

9   defense or bar to recovery.  *See, e.g., United States v. Gaubert*, 499 U.S. 315, 324-325, 111

10   S.Ct. 1267 (1991) (recognizing that motions to dismiss can be granted when defendants have

11   statutory or common law immunities).  A plaintiff's failure to meet Rule 9(b)'s heightened

12   pleading requirements for fraud may also provide the basis for a Rule 12(b)(6) motion to

13   dismiss.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107-08 (9th Cir. 2003).

14          **C.  Noerr-Pennington Doctrine**

15          Defendant argues that plaintiff's claims are barred by the *Noerr-Pennington* doctrine on

16   the grounds that its conduct, as agents of the record companies, following the underlying lawsuit

17   is protected by the First Amendment.  The *Noerr-Pennington* doctrine is an antitrust exemption

18   for activities involving the petitioning of governmental bodies, whether legislative, executive, or

19   judicial in nature.  *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365

20   U.S. 127, 81 S.Ct. 523 (1961) (establishing exemption in the context of petitioning a legislature

21   for the passage of laws with anticompetitive intent); *United Mine Workers of Am. v.*

22   *Pennington*, 381 U.S. 657, 85 S.Ct. 1585 (1965) (expanding the doctrine's coverage to

23   petitioning the executive for the enforcement of laws); *California Motor Transport Co. v.*

24   *Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609 (1972) (further expanding the doctrine to cover

25   petitions for relief before a court or administrative agency).  In other words, "[t]hose who

26   petition government for redress are generally immune from *antitrust liability*."  *Prof'l Real*

MEMORANDUM ORDER - 6

1    *Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56, 113 S.Ct. 1920 (1993)

2    (emphasis added).

3            Although the doctrine originally arose in the antitrust context, defendant correctly argues

4    that the immunity is constitutional and rooted in the First Amendment right to petition. *See,*

5    *e.g., Computer Associates Int'l Inc. v. Am. Fundware, Inc.*, 831 F.Supp. 1516, 1552 (D.Colo.

6    1993) (recognizing that *Noerr-Pennington* is not limited to the antitrust arena).[3]  Furthermore,

7    *Noerr-Pennington* bars litigation arising from injuries received as a consequence of First

8    Amendment petitioning activity, regardless of the underlying cause of action asserted by

9    plaintiffs. *Azzar v. Primebank, FSB*, 198 Mich.App. 512, 517, 499 N.W.2d 793 (1993).

10   Therefore *Noerr-Pennington* immunity "bars any claim, federal or state, common law or

11   statutory, that has as its gravamen constitutionally-protected petitioning activity." *Gen-Probe,*

12   *Inc. v. Amoco Corp., Inc.*, 926 F.Supp. 948, 956 (S.D.Cal. 1996).  But courts may not go

13   beyond the constitutional basis for the immunity when applying the doctrine. *Id.*; *see also*

14   *Landmarks Holding Corp.v. Bermant*, 664 F.2d 891, 895-896 (2d Cir. 1981) (describing the

15   doctrine as essentially an application of the First Amendment).

16           While *Noerr-Pennington* immunity is broad, it does not cover all litigation which is

17   brought by an underlying plaintiff, as "sham" petitions do not fall within the ambit of the

18   doctrine. *See Noerr*, 365 U.S. at 144; *Cal. Motor Transp.*, 404 U.S. at 511.  Litigation may be

19   a sham if the plaintiff can demonstrate that the underlying lawsuit was (1) objectively baseless in

20   the sense that no reasonable litigant could realistically expect success on the merits, and (2) a

21   concealed attempt to interfere with plaintiff's business relationships. *Prof'l Real Estate*

22   *Investors*, 508 at 60-61; *see also White v. Lee*, 227 F.3d 1214, 1231-32 (9th Cir. 2000).

23

24           [3] Interesting, plaintiff argues that *Noerr-Pennington* applies exclusively in the antitrust context, and addresses defendant SSC's arguments in one paragraph, stating, "[t]his doctrine has not been

25   extended beyond antitrust litigation." (Dkt. #13 at 17).  However, this Court notes that the United States Supreme Court began extending the doctrine to other areas of law as early as 1982. *See NAACP v.*

26   *Claiborne Hardware Co.*, 458 U.S. 886, 913-915, 102 S.Ct. 3409 (1982) (applying *Noerr-Pennington* immunity in considering whether intent or purpose of a boycott was relevant).

     MEMORANDUM ORDER - 7

1    In the instant case, it is too early for this Court to determine whether the record

2    companies' lawsuit against plaintiff was a sham.  The original case, which was filed in the United

3    States District Court of the Eastern District of Pennsylvania, was voluntarily dismissed on April

4    7, 2005.  (Dkt. #13 at 7).  It was re-filed in this district, the United States District Court of the

5    Western District of Washington, under the caption, *Interscope Records, et al. v. Dawnell*

6    *Leadbetter*, No. CV05-1149 on June 24, 2005.  In that case, Ms. Leadbetter has just recently

7    submitted an answer, arguing that she "did not engage in any of the alleged infringing activities,"

8    and stating that the record companies had "brought [the] suit against the wrong party."

9    Defendant's Answer, ¶ 11, No. CV05-1149-MJP-RSL.

10    Consequently, it would be premature for this Court to hold that the underlying lawsuit is

11    not a "sham" for purposes of *Noerr-Pennington* immunity when no discovery has been

12    conducted in that case.  Plaintiff argues that there is a strong possibility that the record

13    companies will never be able to prove who may have downloaded the copyrighted materials.

14    (Dkt. #13 at 16).  Coupled with the fact that the record companies filed suit against roughly

15    11,000 individuals, the Court must reserve judgment upon applying the immunity.

16    Accordingly, the Court denies defendant motion to dismiss based on the *Noerr-*

17    *Pennington* doctrine.

18    **D.  Civil Conspiracy**

19    A civil conspiracy exists "if two or more persons combine to accomplish an unlawful

20    purpose or combine to accomplish some purpose not in itself unlawful by unlawful means."

21    *Corbit v. J.I. Case Co.*, 70 Wn. 2d 522, 528, 424 P.2d 290 (1967).  Furthermore, the

22    conspirators must have entered the agreement to accomplish the object of the conspiracy.  *Id.* at

23    528-529.  Mere commonality of interests is insufficient to prove a conspiracy.  *See Wilson v.*

24    *State*, 84 Wash.App. 332, 351, 929 P.2d 448 (1996).

25    In the instant case, plaintiff contends that defendants Comcast and SSC committed civil

26    conspiracy by agreeing to improperly acquire information.  However, defendant Comcast did not

MEMORANDUM ORDER - 8

1  engage in any unlawful activity as it properly complied with a valid court order.  Furthermore,

2  there are no allegations in plaintiff's complaint that the defendants came to any semblance of an

3  agreement.

4          Accordingly, the Court grants defendant's motion to dismiss plaintiff's civil conspiracy

5  claim.

6          **E.  Washington's Consumer Protection Act**

7          To state a private cause of action under the Washington Consumer Protection Act, RCW

8  19.86.090 ("CPA"), a plaintiff must "establish five distinct elements: (1) unfair or deceptive act

9  or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff

10  in his or her business or property; and (5) causation." *Hangman Ridge Training Stables, Inc. v.*

11  *Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).  In regards to the fourth

12  element, Washington courts have established that the CPA does not allow claims for personal

13  injury.  *See, e.g., Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122

14  Wn.2d 299, 318, 858 P.2d 1054 (1993) (recognizing that damages for mental pain and suffering

15  are not recoverable for a violation of the CPA because the statute only allows recovery for harm

16  to "business or property"); *see also White River Estates v. Hiltbruner*, 134 Wn.2d 761, 765 n.1

17  (1998) (noting that emotional distress damages are not available for a violation of the CPA).

18          Here, plaintiff does not allege in her complaint any damages to her business or property.

19  Plaintiff is an individual and does not raise any facts which lead the Court to believe she owns or

20  possesses a business.  Additionally, plaintiff mentions no property that was damaged as a result

21  of defendant SSC's alleged violations of the CPA.  Further, "had our Legislature intended to

22  include actions for personal injury within the coverage of the CPA, it would have used a less

23  restrictive phrase than injured in his or her 'business or property.'" *Fisons*, 122 at 318.  In

24  addition, plaintiff does nothing to refute this claim, relying only upon the argument that because

25  the allegations contained in the complaint "are sufficient to put [SSC] on notice of [plaintiff's]

26  claims, its motion must be denied."  (Dkt. #13 at 13).

MEMORANDUM ORDER - 9

1      Accordingly, the Court grants defendant's motion to dismiss plaintiff's Washington CPA

2  claim.

3          **F.      The Fair Debt Collection Practitioner's Act**

4          The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") generally imposes

5  civil liability upon third party debt collectors who use false, deceptive, abusive, unfair, or other

6  related debt collection activities in order to collect consumer debt.  *See generally Kramsky v.*

7  *Trans-Continental Credit & Collection Corp.*, 166 F.Supp.2d 908, 910 (S.D. N.Y. 2001).  The

8  threshold issue "is whether or not the dispute involves a 'debt' within the meaning of the statute.

9  *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004) *citing Slenk v. Transworld Sys., Inc.*,

10  236 F.3d 1072, 1075 (9th Cir. 2001).

11          The FDCPA defines "debt" as "*any obligation* or *alleged obligation* of a consumer to

12  pay money arising out of a transaction in which the money, property, insurance or services

13  which are the subject of the transaction are primarily for personal, family, or household

14  purposes, whether or not such obligation has been reduced to judgement."  15 U.S.C. §

15  1692a(5) (emphasis added).  The term "debt" has been construed broadly to include any

16  obligation to pay arising out of a consumer transaction.  *See Arruda v. Sears, Roebuck & Co.*,

17  273 B.R. 332, 350 (D.R.I. 2002).  Moreover, the statute is limited in its reach "to those

18  obligations to pay arising from consensual transactions, where parties negotiate or contract for

19  consumer-related goods or services."  *Turner*, 362 F.3d at 1227 (recognizing that this generally

20  reflects the consensus judicial interpretation) *citing Bass v. Stopler, Koritzinsky, Brewster &*

21  *Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997).

22          In the instant case, defendant SSC argues that its offer to settle plaintiff's lawsuit with

23  the record companies does not constitute "debt" for purposes of the FDCPA because copyright

24  infringement is a tort, and the offer to settle did not arise out of a business dealing or consensual

25  agreement.  In support of its argument, defendant SSC relies on *Turner*, which affirmed a

26  district court's dismissal of an FDCPA claim on a Rule 12(b)(6) motion to dismiss.  *Turner*, 362

MEMORANDUM ORDER - 10

1   F.3d at 1228 (finding that tort judgment did not constitute debt).  Although plaintiff argues that

2   it is contractually obligated to pay third parties for any alleged infringing activity, plaintiff never

3   had a direct agreement with defendant SSC.  The FDCPA "may be triggered only when an

4   obligation to pay arises out of a *specified* "transaction," and the "ordinary meaning of

5   'transaction' necessarily implies some type of business dealing *between parties*."  *Hawthorne v.*

6   *Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (emphasis added).

7          Furthermore, a fundamental canon of statutory construction directs the Court to

8   interpret words according to their ordinary meaning.  *See Perrin v. United States*, 444 U.S. 37,

9   42, 100 S.Ct. 311 (1979).  Consequently, there exists no "transaction" between plaintiff and

10  defendant SSC that could give rise to a "debt" for purposes of the FDCPA.  Although "debt"

11  has been broadly construed by the courts, defendant SSC's efforts to collect a potential tort

12  judgment does not meet this definition.  In fact, plaintiff has never been obligated to pay this

13  amount, and most likely will not pay any amount should she successfully defend herself in the

14  underlying lawsuit brought by the record companies.

15         Accordingly, the Court grants defendant's motion to dismiss plaintiff's FDCPA claim.

16     **G.  Washington's Collection Agency Act**

17         Plaintiff alleges that defendant SSC has violated Washington's Collection Agency Act,

18  RCW 19.16 ("WCAA").  Under the WCAA, which regulates the conduct of collection agencies,

19  a claim is defined as "any obligation for the payment of money or thing of value arising out of

20  any agreement or contract, express or implied."  RCW 19.16.100(5).  Similar to the FDCPA

21  claim, defendant SSC argues that an offer to settle a tort action does not constitute a "claim" for

22  purposes of the WCAA.

23         No Washington decision has interpreted the statutory provisions of the WCAA.  But it is

24  evident in this case that like plaintiff's FDCPA claim, Ms. Leadbetter has no obligation to pay

25  the amounts that defendant SSC is demanding.  In addition, there has been no express or implied

26  agreement between plaintiff and defendant which has created any obligation for plaintiff to pay.

MEMORANDUM ORDER - 11

1   However, the Court acknowledges that plaintiff's complaint states, "[v]iolations of RCW 19.16

2   constitute unfair or deceptive trade practices in violation of RCW 19.86." (Dkt.#1-1 at 37).

3   RCW 19.86.20 states, "[u]nfair methods of competition and unfair or deceptive acts or practices

4   in the conduct of any trade or commerce are hereby declared unlawful." Moreover, plaintiff's

5   complaint alleges that defendant SSC "failed to provide the name of the alleged original creditor

6   to whom Dawnell Leadbetter allegedly and falsely owed them money[,] . . . failed to provide to

7   Dawnell Leadbetter a written statement of account or the amount of the alleged debt[,] . . .

8   [and] failed to provide Dawnell Leadbetter with valid contact information regarding its address

9   and the fact that it was not properly licensed to collect 'debt' in Washington State." (Dkt. #1-1

10   at 37).

11        As a result, the Court allows plaintiff leave to amend its original complaint as to this

12   specific claim. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P.

13   15(a); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Further, "[w]here a

14   more carefully drafted complaint *might* state a claim, a plaintiff *must be given at least one more*

15   *chance* to amend the complaint before the district court dismisses the action with prejudice."

16   *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (emphasis added). Considering that plaintiff

17   has included RCW 19.86 in its complaint, coupled with the allegations already included in

18   plaintiff's complaint which indicate to the Court that defendant has allegedly engaged in unfair

19   or deceptive acts, plaintiff should be allowed to amend its complaint.

20        Accordingly, the Court denies defendants motion to dismiss plaintiff's WCAA claim and

21   allows plaintiff leave to amend its complaint to delineate to the Court how violations of the

22   WCAA constitute violations of RCW 19.86.

23        **H. Fraud**

24        Rule 9(b) requires a plaintiff to plead fraud with particularity. Fed. R. Civ. P 9(b).

25   Furthermore, a plaintiff asserting fraud "must set forth more than neutral facts necessary to

26   identify the transaction. [She] must set forth what is false or misleading about a statement, and

MEMORANDUM ORDER - 12

why it is false." *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

In order to state a claim for fraud under Washington law, it must include nine elements: (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; and (9) his consequent damage. *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1233-34 (9th Cir. 2005) *citing Kirkham v. Smith*, 106 Wash.App. 177, 183, 23 P.3d 10 (2001).

In the instant case, defendant argues that the basis of plaintiff's fraud claim is based upon defendant SSC's alleged misrepresentation "that Comcast had properly provided to them Dawnell Leadbetter's personal information pursuant to a court order in the case in which she had 'already been sued.'" (Dkt. #9-1 at 20). However, the complaint also consistently refers to defendant SSC's allegedly abusive tactics in order to coerce payment. But these references are not included in plaintiff's specific cause of action for fraud. Therefore, as with plaintiff's WCAA claim, where a complaint *might* state a claim, a plaintiff *must be given at least one more chance* to amend the complaint before the district court dismisses the action with prejudice. *See Banks*, 928 F.2d at 1112 (emphasis added). Here, plaintiff asserts sufficient facts to potentially constitute a cause of action for fraud.

Accordingly, the Court denies defendant's motion to dismiss plaintiff's fraud claim, and allows plaintiff leave to amend its fraud claim.

### III.  CONCLUSION

Having reviewed defendant's motion to dismiss (Dkt. #9), plaintiff's response (Dkt.

MEMORANDUM ORDER - 13

#13), defendant's reply (Dkt. #16), the exhibits in support of those briefs, and the remainder of the record, the Court hereby GRANTS IN PART defendant's motion to dismiss plaintiff's FDCPA, Washington CPA, and civil conspiracy claims with prejudice.  The Court hereby DENIES IN PART defendant's motion to dismiss plaintiff's WCAA and fraud claims, and allows plaintiff LEAVE TO AMEND its WCAA and fraud claims.

The Clerk shall forward a copy of this Order to all counsel of record.

DATED this   19   day of August 2005.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

MEMORANDUM ORDER - 14